922 So.2d 1 (2004)
Audra Faye LAWRENCE and Robert Lawrence, Appellants
v.
Angie WRIGHT and Wayne Robinson, (Individually and d/b/a R & W salvage grocery), and Donnie B. Johnson, Individually and Severally, Appellees.
No. 2003-CA-01103-COA.
Court of Appeals of Mississippi.
August 24, 2004.
Rehearing Denied November 1, 2005.
Certiorari Denied February 9, 2006.
Phil R. Hinton, Corinth, attorney for appellant.
Mitchell Orvis Driskell, Wilton V. Byars, Oxford, Billy Bronson Tabler, attorneys for appellee.
Before KING, C.J., LEE and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Audra Faye Lawrence slipped on a patch of ice in a parking lot and broke her leg. Lawrence sued the owners of the business and the owner of the parking lot to recover monetary damages for her injuries. At trial, the court granted the defendants' motion for summary judgment. Lawrence now appeals.

FACTS
¶ 2. On January 9, 1999, Lawrence traveled from her home in Corinth to R & W *2 Salvage Grocery in Burnsville, Mississippi. The previous week, Northeast Mississippi experienced freezing temperatures, sleet, and snow. On January 9, it was clear and sunny but the temperature was still below freezing.
¶ 3. When Lawrence arrived at the strip mall where R & W is located, she parked her car in the first row of parking spaces, crossed the parking lot, and entered the store without incident. After Lawrence made her purchases, an R & W employee carried them to her car for her. On the way back to her car, Lawrence slipped on a patch of ice in the parking lot and broke her leg.
¶ 4. Lawrence brought suit against the owners of R & W, Wayne Robinson and Amy Wright, and the owner of the strip mall and parking lot, Donnie Johnson, alleging that they were negligent by not clearing the parking lot of ice. All three defendants were granted summary judgment.

STANDARD OF REVIEW
¶ 5. This Court reviews the grant or denial of summary judgment de novo. Hardy v. Brock, 826 So.2d 71, 74 (¶ 14) (Miss.2002) (citing Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist., 743 So.2d 311, 314 (¶ 11) (Miss.1999)). The burden of demonstrating that no genuine issue of fact exists is on the moving party. The non-movant is therefore given the benefit of the doubt. Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393 (¶ 10) (Miss.2001). In conducting the de novo review, the Court considers all evidentiary matters before the trial court, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So.2d 845, 847(¶ 5) (Miss.2001) (citing Aetna Cas. and Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996)).

ANALYSIS
¶ 6. Lawrence argues that the summary judgment was not proper. The facts bring this case squarely within the "natural condition" rule that was addressed in Fulton v. Robinson Indus., Inc. 664 So.2d 170, 175 (Miss.1995). In Fulton, the Mississippi Supreme Court concluded:
The entire body of slip and fall case law combined with this Court's latest pronouncements on the open and obvious doctrine can be summed up in these black letter conclusions:
(1) if an invitee is injured by a natural condition on a part of the business that is immediately adjacent to its major entrance and exit, then there is a jury question as to the openness and the obviousness of the danger. Goodwin v. Derryberry Co., 553 So.2d 40 (Miss.1989).
(2) if an invitee is injured by a natural condition on a remote part of the business premises, and the danger was known and appreciated by the injured party, then there is no jury question. Lucas v. Buddy Jones Ford Lincoln Mercury, Inc., 518 So.2d 646 (Miss.1988).
(3) if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger. Tharp v. Bunge Corp., 641 So.2d 20 (Miss.1994); Tate v. Southern Jitney Jungle, 650 So.2d 1347 (Miss.1995); Baptiste v. Jitney Jungle, 651 So.2d 1063 (Miss. 1995); Downs v. Choo, 656 So.2d 84 (Miss.1995).
Fulton, 664 So.2d at 175.
¶ 7. Here, it was undisputed that Lawrence was a business invitee. Likewise, there is no dispute that Lawrence was injured by a natural condition, not an artificial or man-made condition. Lawrence *3 slipped on ice that had accumulated on the parking lot during winter storms, which occurred the week prior to the incident. Neither the owners of R & W nor the owner of the strip mall parking lot caused the ice to accumulate. Thus, the ice in the parking lot was a natural condition.
¶ 8. Our consideration is limited to the first two of the three examples cited in Fulton. The outcome of our consideration will rely on the determination of whether Lawrence's injury occurred immediately adjacent to the entrance/exit or on a remote part of the business premises.
¶ 9. In Fulton, the court clearly described where the parties parked, their route to the entrance and where the injury occurred. Id. at 171-72, 174 and 175. Thus, in Fulton, the court guides our consideration of the distinction between "immediately adjacent" versus "remote".
¶ 10. After a snowfall, Fulton and his mother arranged to meet his brother at a McDonald's restaurant. Id. at 171. They parked next to each other, got out and walked "across the open parking lot toward the restaurant." Id. at 171-72. Fulton slipped and fell on some ice located in the middle of the parking lot. Id. at 172. The court noted that his fall was not in "close proximity to the actual building." Id. at 174. To reach its conclusion, the court described the site of Fulton's fall as "nowhere near or in close proximity to either entrance of the restaurant," and distinguished the location of Fulton's fall from the location of the fall in Goodwin. Fulton, 664 So.2d at 175.
¶ 11. In Goodwin, the plaintiff parked his truck in front of a driveway adjacent to the Derryberry store. Goodwin, 553 So.2d at 41. As he left the store, Goodwin slipped and fell on ice accumulated on a pathway to the store. The ice was there due to a recent winter storm. Id. The court held that it was reasonable to expect the Derryberry Company to maintain its immediate surroundings, where it was usual for business invitees to travel. Id.
¶ 12. The Fulton court distinguished Goodwin by holding that "[h]ere, there is no way for a restaurant like McDonald's to anticipate/expect which direction/route an invitee situated out in a parking lot may choose to come when entering the restaurant." Fulton, 664 So.2d at 174. The court specifically found that Fulton was injured on a remote part of the business premises (the parking lot), and that his fall was due solely to his own actions in walking on snow and ice, a God-made condition of which he was fully aware. Id. at 175. Thus, the court determined that, as a matter of law, it was enough that Fulton was injured in the parking lot, that is a remote part of the business, rather than, as Goodwin, in a designated walkway or covered area that was immediately adjacent to and directly connected to the business' entrance or exit. Id.
¶ 13. In Lucas, the appellant was a licensee who fell as he walked across the car lot to the service area. Lucas, 518 So.2d at 647. When he reached the freight ramp, Lucas slipped and fell on accumulated ice from a recent winter storm. Id. The trial court granted summary judgment and held that the defendant "would have only owed her the duty of exercising reasonable care to keep the premises safe,... and the ice which caused Lucas to fall was in no way hidden or concealed." Id. In Fulton, the court interpreted this holding to mean that "a business does not need to clear off any fallen snow in its parking lot well away from the immediate surrounding entrance or exit of the physical building in order to be exercising reasonable care." Fulton, 664 So.2d at 173. Based on Lucas, the court ruled that "Robinson had exercised reasonable care to keep its restaurant premises safe since the law does not require it to clear the snow off its parking lot." Id.
*4 ¶ 14. Lawrence argues that since she was parked in the first row of the parking lot, she was not on a remote part of the premises. The defendants/appellees argue that Lawrence did not fall in the designated walkway between the building and the concrete parking barriers in front of R & W or in the covered entrance to R & W. They also argue that it is important to note that the parking lot is separated from the building by a designated walkway, which is approximately fifteen feet wide. Lawrence fell at least twenty to twenty-five feet from the designated walkway, which is at least thirty-five feet from the entrance to R & W.
¶ 15. Here, it was undisputed that Lawrence fell in the parking lot rather than on the sidewalk or covered area leading to the store's entrance. Based on Fulton, business owners are not required to clear naturally accumulated ice and snow from their parking lots. Fulton, 664 So.2d at 175. Therefore, we find that under Fulton, the parking lot where Lawrence fell was a remote part of the business premises.
¶ 16. Next, Lawrence argues that there was a jury issue as to whether she knew and appreciated the danger. She argues that there is no evidence in the record that would establish her knowledge of the danger. She claims that the ice was clear and blended with the asphalt.
¶ 17. The appellees counter by citing the following language from Fulton:
When dealing with potentially dangerous natural conditions, this Court chooses to look at the natural conditions in terms of what the customer can "normally encounter" or "expect" coupled with an examination of whether the condition is "unusual" or "usual" in order to determine whether a jury question exists.
Id. Further, the appellees cite the Fulton court's holding that sleet, slush and ice were usual winter conditions which individuals can "expect to encounter." Id. The evidence was undisputed that the area had recently experienced freezing temperatures combined with precipitation, which produced ice. Thus, under Fulton, the trial court correctly concluded that ice in a parking lot, which existed several days after a winter storm, was a natural conditions that Lawrence could have expected to encounter.
¶ 18. Under the natural condition rule set forth in Fulton, summary judgment was proper. We affirm the trial court's entry of summary judgment.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF TISHOMINGO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES, P.J., LEE, MYERS AND CHANDLER, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. IRVING AND BARNES, JJ., NOT PARTICIPATING.